IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON

MARY E. GILLISPIE,

    Plaintiff,

V.                        CIVIL ACTION NO. 3:08-0111

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

## MEMORANDUM ORDER

In this action, filed under the provisions of 42 U.S.C. §§405(g) and 1383(c)(3), plaintiff seeks review of the final decision of the Commissioner of Social Security denying her applications for disability insurance benefits and supplemental security income based on disability. The case is presently pending before the Court on cross-motions of the parties for judgment on the pleadings.

Plaintiff filed her applications August 4, 2003, alleging disability commencing December 1, 1999,[1] as a consequence of scoliosis, osteoarthritis of the left foot, spurs on the left heel, herniated disc, bulging disc, migraine headaches, carpal tunnel syndrome, depression and anxiety. On appeal from initial and reconsidered denials, an administrative law judge, after hearing, found plaintiff not disabled in a decision which became the final decision of the Commissioner when the Appeals Council denied a request for review. Thereafter, plaintiff filed this action seeking review of the Commissioner's decision.

---

[1]Plaintiff's insured status expired on September 30, 2001 and, for purposes of her application for disability insurance benefits, it was incumbent upon her to establish disability on or before that date. Harrah v. Richardson, 446 F.2d 1, 2 (4th Cir. 1971).

At the time of the administrative decision, plaintiff was twenty-eight years of age and had obtained a high school education plus one year of college. Her past relevant employment experience consisted of work as a cashier and nursing assistant. In his decision, the administrative law judge determined that plaintiff suffers from "obesity and low back pain," impairments he found severe. Though concluding that plaintiff was unable to perform her past work,[2] the administrative law judge determined that she had the residual functional capacity for a limited range of light level work. On the basis of this finding, and relying on Rule 202.21 of the medical-vocational guidelines[3] and the testimony of a vocational expert, he found plaintiff not disabled.

From a review of the record, it is apparent that substantial evidence supports the Commissioner's decision. Plaintiff testified she is disabled due to a combination of back pain which radiates into the lower extremities, swelling in the left leg, spurs on the left ankle, migraines, carpal tunnel syndrome, anxiety and depression. She testified to having very few daily activities, primarily as a result of pain, although some of her statements in this regard are conflicting. For instance, she testified her ability to drive is limited, and she does it only two to three times a week; however, on October 8, 2003 she told Mareda Reynolds, M.A., the Commissioner's consultative psychological evaluator, that she was in her third year of college and was attending classes at Marshall three days a week which required her to drive. She also told Ms. Reynolds she drove her daughter to and from school each day and after school made dinner and helped with homework and bathing, activities which she alleged were not possible because of pain.

---

[2] This finding had the effect of shifting a burden of production to the Commissioner with respect to other work plaintiff was capable of performing. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981); McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

[3] 20 C.F.R. Part 404, Subpart P, Appendix 2, Table No. 2.

At the outset, it is noted, with respect to the medical evidence, that most of the treatment plaintiff received for physical problems was from Dr. M. C. Shah. Plaintiff saw him frequently from May 20, 2000 through March 22, 2005; however, his reports are very brief and largely illegible. Neither the exam findings nor the diagnosis/prescribed treatment can be deciphered except for the notations at the top of each report specifying the reason for plaintiff's visit.

From information at the beginning of the reports, it can be seen that plaintiff was obese, weighing as much as 365 pounds at a height of five foot seven inches, and her blood pressure was also elevated at times. There are indications she was prescribed medication for this. While it is not clear that the medication kept her blood pressure under good control as the administrative law judge determined, it does not appear that this condition imposed any significant work-related limitations. The administrative law judge's finding that high blood pressure is not a severe impairment is, therefore, supported by substantial evidence.

Carpal tunnel syndrome, another condition about which plaintiff testified at the hearing, does not appear to have been reported to doctors, diagnosed or treated. While plaintiff indicated that she wore splints on her hands, it is unclear who prescribed them or when. Dr. Gobunsuy, who performed a consultative physical exam on October 14, 2003, found no tenderness or abnormalities of the hands, and plaintiff was able to write and pick up a coin without difficulty. The administrative law judge thus determined that this condition did not constitute a severe impairment, and there is clearly substantial support for this finding.

The administrative law judge similarly determined that migraine headaches were not significant enough to be classified as a severe impairment. The record reflects complaints to Dr. Shah about this problem and treatment with medication; however, the complaints are relatively

infrequent. A CT scan of the brain performed on July 5, 2001 was interpreted as unremarkable. While the evidence does not necessarily establish this condition is "adequately controlled" with medication as the administrative law judge found, it does establish that plaintiff's headaches did not occur frequently enough to significantly interfere with her ability to maintain employment. Thus, the administrative law judge's finding in this regard is also supported by substantial evidence.

Plaintiff has complained of pain and swelling in her lower extremities related to arthritis, her back condition and obesity. The medical evidence contains an x-ray of the left foot dated May 31, 2000 interpreted as showing minor osteoarthritis at the first metatarsalphalangeal joint,[4] a small heel spur and osteophytosis[5] of the talus[6] and the talonavicular bone.[7] Plaintiff twisted her right knee when she fell in January 2001, but an x-ray taken at that time was considered normal. On July 2, 2003, plaintiff complained of leg pain when at rest, primarily at night, and on July 11, she reported a three-week history of left ankle swelling. A subsequent x-ray of the ankle was interpreted as normal.

Dr. Gobunsuy observed a mildly antalgic gait favoring the left leg during his October 14, 2003 consultative exam. He noted plaintiff could walk steadily without an ambulatory aid, however. No edema was observed in either lower extremity, but plaintiff was not able to stand on the left leg

---

[4] These joints are between the metatarsal bones (the five cylindrical bones which extend from the heel to the beginning of the toes) and the bones of the toes. The joints permit movement. Attorney's Dictionary of Medicine, M-168, 169 (2007).

[5] A condition marked by the presence of osteophytes (bony outgrowths). Id. at O-122.

[6] This is the highest of the bones of the foot, located directly above the bone of the heel. It joins the lower ends of the tibia and fibula to form the ankle joint. Id. at T-15.

[7] Pertaining to, extending between or involving the talus and the navicular, a small bone directly in front of the talus with which it forms a joint. Id. at T-14.

alone and could not walk on her heels or toes, had difficulty walking heel-to-toe in tandem and could not squat. There was tenderness observed in the left ankle but full range of motion. The knees were not tender, but range of motion was somewhat limited. Dr. Gobunsuy noted plaintiff favored the left leg when walking due to pain in the left ankle and also felt plaintiff's weight contributed to her ankle problems.

After July 28, 2003 there appear to be no references to lower extremity problems until April 19, 2004 when plaintiff again reported to Dr. Shah she was experiencing left leg swelling and pain. The exam form completed by this physician indicates that plaintiff's extremities were normal. Arterial and venous Doppler studies on the left lower extremity conducted April 28, 2004 were considered unremarkable. Exam findings were also recorded as normal on June 1, 2004 when plaintiff reported her right leg was swollen and on June 15 when she related having continued left foot edema. Reports reflect another ankle sprain in January 2005, but do not specify which ankle. Again, Dr. Shah's exam form reflects normal findings. Another x-ray of the left ankle on March 3, 2005 shows spurring in the area of the medial malleolus,[8] the heel and at the talonavicular joint. Dr. Marshall, the medical expert consulted by the administrative law judge, expressed the opinion that the spur formation in the left foot/ankle was "not a major problem" and might call for a shoe insert and possibly keep plaintiff from heavy level work, but that would be the extent of it.

The administrative law judge concluded that this was not a severe impairment. While it is not completely clear from the evidence whether the gait and other abnormalities observed by Dr. Gobunsuy were continuing, the Court concludes that, even if this impairment were significant

---

[8]The bony projection at the lower end of the tibia. It forms the rounded prominence on the inner side of the ankle. Attorney's Dictionary of Medicine, supra, at M-27.

enough to impose work-related limitations, they would not limit plaintiff beyond what the administrative law judge found when he assessed her residual functional capacity

Plaintiff testified she had been treated for depression and anxiety for four to five years at the Prestera Center. She went infrequently, however, seeing her therapist "maybe" one time per month. She is prescribed anti-depressant and anti-anxiety medication, and takes the latter as needed when she starts feeling nervous, which she indicated was once every day. This medication calms her down, but she claims both medications make her sleepy and cause her to lie down for two to three hours after taking them.

The reports from Prestera reflect a diagnosis of major depression beginning on April 11, 2001. Plaintiff reported improvement with medication and began attending college the following August. Once she began college, the stresses of managing her course load and caring for her daughter caused increased stress and anxiety; however, she completed her first semester and reported on February 27, 2002 during the second semester, that she was attending college full-time in spite of her anxiety and depression and that these conditions had improved since she began treatment.

During the October 8, 2003 psychological evaluation, Mareda Reynolds, M.A. reported plaintiff drove herself to the appointment; drove daily, taking her daughter to and from school; and drove back and forth to her college classes which, at that time, were three days a week. Ms. Reynolds observed that plaintiff seemed disinterested during the evaluation which plaintiff attributed to having a migraine headache. Mood was dysphoric and affect mildly constricted but appropriate as was her social interaction. Plaintiff's memory was normal with attention and concentration mildly deficient, persistence mildly impaired and pace slow. While psychomotor activity was considered

to be slowed, Ms. Reynolds noted plaintiff was able to ambulate and use all of her extremities effectively. Her diagnosis was dysthymic disorder and anxiety disorder, NOS.

State agency psychologists reviewing the evidence concluded plaintiff's mental impairments were not severe. The administrative law judge found these opinions persuasive in light of plaintiff's ability to care for her daughter and take a full college course load during the time she was in treatment at Prestera. The Court again finds his conclusions is supported by substantial evidence.

With regard to plaintiff's back pain, reports from Dr. Shah do not reflect that this condition was a frequent source of her complaints. As noted, this physician's exam findings are not legible. While he began using printed forms for his office notes in May 2003, there are few abnormal findings noted on any of these forms, and they all seem to deal with upper respiratory-type symptoms. An x-ray of the lumbar spine taken on February 18, 2004 was considered normal, and an MRI performed two months later was interpreted as consistent with congenital lumbar canal stenosis throughout with "minimal" degenerative changes at L3-4 and L4-5. While plaintiff has reported to some medical sources that she has a herniated disc in her spine, there is nothing in the evidence which confirms this. The diagnosis was usually listed as lumbar strain. Dr. Gobunsuy reported plaintiff had some difficulty arising from a seated position, that the lumbar spine was "sore" and that range of motion was somewhat reduced. As noted, difficulties with standing on the left leg and walking on the heels, toes, heel-to-toe, and squatting were documented. It is not clear whether these were related to back pain, knee, ankle or foot problems or obesity. Plaintiff was diagnosed by most examiners as "morbidly" obese,[9] and these examiners indicated that her excess weight was

---

[9]This term was "formerly" used to denote obesity of such degree as to be productive of disease, usually 200% or more of normal body weight. The preferred term is now "extreme" obesity. See Attorneys' Dictionary of Medicine at O-3 (2007).

likely a factor in all of her musculoskeletal pain complaints, yet none was of the opinion that by itself this impairment would have prevented plaintiff from performing all work activity.

Dr. Shah was the only examining physician to express an opinion on plaintiff's ability to work. In an April 1, 2005 note addressed "To Who It May Concern," he listed plaintiff's diagnoses as hypertension, chronic back pain, fatigue, anxiety with depression and morbid obesity.[10] After also listing the medication she was prescribed, Dr. Shah opined that plaintiff was "totally disabled at this time and unable to hold any gainful employment." The state agency medical advisors, in assessments dated November 12, 2003 and March 10, 2004, found plaintiff capable of light level work requiring no more than occasional climbing, balancing, stooping, kneeling, crouching or crawling and no concentrated exposure to extreme cold. The more recent evaluation also limits plaintiff to no climbing of ladders, ropes or scaffolds, no exposure to hazards and no concentrated exposure to extreme heat. Dr. Marshall, the medical expert, concluded plaintiff could lift and carry fifty pounds occasionally, twenty frequently; stand/walk a total of four hours per work day, one to two hours at a time; sit without limitation; climb, balance, stoop, kneel, crouch and crawl only occasionally; and could have only limited exposure to heights and moving machinery.

The administrative law judge declined to give significant weight to Dr. Shah's opinion, noting that the issue of whether or not a claimant is disabled is for the Commissioner to decide.[11] He also pointed out that Dr. Shah's reports did not "contain any significant clinical findings" but "merely set forth the claimant's subjective complaints of pain . . .." This finding is clearly supported by the evidence.

---

[10]Interestingly, he does not mention any lower extremity condition.

[11]See 20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1).

The administrative law judge did adopt residual functional capacity findings consistent with those from the state agency medical advisors, although his are more restrictive. While finding plaintiff could perform light level work, he concluded she could stand and walk a total of only two hours per day, one-half hour at a time. He also determined she should never climb ladders, ropes or scaffolds, should avoid concentrated exposure to extreme temperatures and avoid all exposure to hazards, consistent with the more recent assessment from March 2004. These findings clearly take account of plaintiff's impairments, both severe and non-severe, and are supported by the substantial evidence in the record.

While plaintiff complained of significant limitation on her functioning due to pain, depression and anxiety, the administrative law judge, taking account of the evidence as well as his observations of plaintiff at the hearing, concluded that her testimony was not fully credible. As noted, he considered it very significant that, despite the many limitations alleged by plaintiff she was able to continue to take college courses for several years. Though she stated at the hearing she only completed one year of college because it was too hard for her to get around campus, the evidence clearly shows otherwise. The administrative law judge pointed out plaintiff's testimony as to driving and how it was inconsistent with reports she made to examining physicians. He also referenced conflicting reports relative to plaintiff's ability to lie in bed for prolonged periods of time. In view of the evidence, and taking account of the administrative law judge's "opportunity to observe the demeanor and to determine the credibility of the claimant," these findings are entitled to "great weight." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). Finally, in response to hypothetical questioning which included plaintiff's age, education, work experience and a reasonably accurate profile of her functional capacity and overall medical condition, a vocational expert testified there

were significant numbers of light and sedentary jobs in the national economy allowing for sit, stand/walk option which plaintiff could perform. While this witness indicated the Dictionary of Occupational Titles ("DOT") does not allow for a sit/stand option, based on her experience, she verified that the examples cited do allow for this. She also testified in response to questioning from plaintiff's counsel, that the two examples of light level jobs she listed were indeed classified as light despite allowing for no more than two hours walking per day.

Resolution of conflicts in the evidence is within the province of the Commissioner, not the courts, Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964), and if the Commissioner's findings are supported by substantial evidence this Court is bound to uphold the decision. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). In the present case, the evidence, though conflicting, provides substantial support for the Commissioner's findings with respect to plaintiff's impairments and residual functional capacity. Under such circumstances, the decision of the Commissioner must be affirmed.

On the basis of the foregoing, it is **ORDERED** that plaintiff's motion for judgment on the pleadings be denied, that the like motion of defendant be granted and the decision of the Commissioner affirmed. All matters in this case being concluded, it is **ORDERED** dismissed and retired from the Court's docket.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

                                        ENTER:       March 30, 2009

                                        ROBERT C. CHAMBERS
                                        UNITED STATES DISTRICT JUDGE